IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

EDGARDO MUNOZ,

    Petitioner,               No. 2:08-cv-2289 WBS JFM HC

    vs.

MIKE MCDONALD, Warden,[1]

    Respondent.          <u>FINDINGS AND RECOMMENDATIONS</u>

                            /

Petitioner is a state prisoner proceeding in propria persona with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges his 2006 conviction on charges of attempted murder, in violation of Cal. Penal Code § 664/187(a)[2], with an allegation of personal use of a firearm, in violation of § 12022.5(a), and the determinate sentence of nineteen years in prison imposed thereon on August 22, 2006. Petitioner raises one claim in his petition, filed September 29, 2008, that his prison sentence violates the Constitution.

/////

---

[1] Respondent's request to substitute Mike McDonald, current acting Warden of High Desert State Prison, is granted.

[2] All statutory references will be to the California Penal Code unless noted otherwise.

1

FACTS[3]

As [petitioner] entered a no contest plea, the facts underlying the offenses are taken primarily from the probation report.

On June 27, 2005, officers responded to a report of shots fired and robbery in progress.

Officers found a car high-centered on a berm. The windshield and rear windows of the car had been broken and glass was scattered throughout the car's interior. The stereo had been torn from its mountings. The driver, John Masters, had a head injury and was bleeding from his left arm.

Masters told officers he had been driving his car when he saw [petitioner], who was driving [petitioner's] sister's car, make a U-turn and start following him. Masters made numerous unsuccessful attempts to lose [petitioner]. [Petitioner] managed to pull up next to Masters's car and attempted to collide with him. Masters swerved to avoid the collision, skidded, and high-centered his car on the berm. He told his two minor passengers to get out and run.

[Petitioner] and three other individuals approached Masters. [Petitioner] struck Masters several times on the head, back and side with a club, and stabbed Masters in the arm with a knife or screwdriver. During the assault, one of [petitioner's] companions stole the stereo from Masters's car.

Some bystanders yelled at [petitioner] and his companions. One of the companions broke Masters's wind-shield with a rock and [petitioner] broke another window. They then got in [petitioner's] car and fled. Masters told officers [petitioner] claimed membership in the Norteño criminal street gang. Although Masters's two passengers had called 911 and said they heard gunshots, officers found no evidence of gunshots. Witnesses saw [petitioner] strike Masters and his car with a pipe.

[Petitioner] claimed he followed Masters's car after Masters made him angry by throwing hand signals and flipping him off. [Petitioner] provided conflicting stories about what happened after Masters's car got stuck on the berm. He said he left at that point. On the other hand, he also said he got out, confronted Masters, and Masters pulled a knife on him. [Petitioner] denied striking Masters with a pipe or pulling out a knife. Later, he said he grabbed a "tool" from the car when he got out to confront Masters and swung it at Masters to protect himself. He also said he did not realize his companion had taken Masters's stereo until he got into the car to leave.

Two months later on August 27, 2005, officers responded to a report of shots fired. Officers found a car flipped over and resting on its roof. Masters and his two minor passengers were being treated by medical personnel.

---

[3] The facts are taken from the opinion of the California Court of Appeal for the Third Appellate District in People v. Munoz, 155 Cal. App. 4th 160 (2007), a copy of which was lodged by respondent on January 26, 2009.

Masters told officers that [petitioner] had pulled up behind him and started shooting at his car while driving at high speed. [Petitioner] rammed the back of Masters's car causing Masters to lose control, go down the embankment and flip over.  [Petitioner] then fled the scene. Witnesses reported hearing gunshots and saw [petitioner's] car leave the scene.  Masters admitted that he was a Sureño criminal street gang member when he was younger.

Masters was flown to the hospital via Enloe Flight Care, where he was treated for a fractured arm and multiple bruises to his head and upper torso. His arm will require further surgery to repair the damage. Masters's two minor passengers were also treated at the hospital. One was treated for head and spinal pain, and pain to his finger. The other was treated for a contusion to his head and for spinal pain.  [Petitioner] had a .22-caliber revolver when he was arrested. At the time of his arrest, he told officers he had engaged in a high-speed chase because Masters had flashed gang signs at him and such "disrespect" upset him. During the chase, Masters slammed on his brakes, which caused [petitioner] to slam into the back of Masters's car. [Petitioner] fled the scene because "there were three of them." [Petitioner] admitted being a Norteño criminal street gang member and was wearing a red belt and had a red bandana in his pocket.

[Petitioner], however, later denied gang membership or gang involvement, although he admitted that he and Masters have had ongoing problems since they were young.  In his later explanation, he claimed he got angry and chased Masters at high speed after Masters flipped him off.  During the chase, he heard gunshots and realized his friend was driving behind them, shooting a gun. [Petitioner] claimed Masters slammed on his brakes, which caused Masters to go off the road and flip over. In another version, [petitioner] claimed that after Masters slammed on his brakes, Masters sped up and came toward [petitioner].

In this version, both cars collided, spun in circles, and Masters's car went off the cliff. [Petitioner] also claimed he was high on crystal methamphetamine at the time of the incident and later arrest.

(People v. Munoz, slip op. at 162-64.)

PROCEDURAL HISTORY

On December 2, 2005, petitioner was charged with one felony count of assault with a deadly weapon, one count of felony vandalism, three counts of attempted murder, and one count of shooting at an occupied motor vehicle. (Lodgment 1 at 32-36.)  The information further alleged enhancements that petitioner personally inflicted great bodily injury upon the victim, that petitioner personally and intentionally discharged a firearm, and that petitioner committed the offenses for the benefit of, and at the direction of, and in association with, a criminal street gang with the specific intent to promote, further and assist in criminal conduct by gang members.  (Id.)

3

On April 20, 2006, petitioner pled no contest to one count of attempted murder and admitted an amended special allegation of personally using a firearm during the attempted murder. (Lodgment 1 at 56-60.) The remaining counts and enhancements were dismissed, along with two other cases; however, as to these dismissed cases and counts, petitioner agreed to a waiver pursuant to People v. Harvey, 25 Cal.3d 754 (1979). (See id. at 56.) The plea agreement provided for a maximum nineteen year prison sentence. (Id. at 58.)

On August 22, 2006, petitioner was sentenced to state prison for a determinate term of nineteen years. (Lodgment 2 at 66.) The court imposed the upper term sentence of nine years on the attempted murder count and added the upper term sentence on the firearm use enhancement of ten years, to be served consecutively. (Id. at 65-66.)

Petitioner appealed, and on September 14, 2007, the Court of Appeal affirmed petitioner's conviction. (Lodgments 3 and 6.)

On October 25, 2007, petitioner filed a petition for review in the Supreme Court of California. The California Supreme Court denied the petition on December 12, 2007.

On September 29, 2008, petitioner filed a petition for writ of habeas corpus in this court. On January 21, 2009, respondent filed an answer. On March 12, 2009, petitioner filed a traverse.

## ANALYSIS

I.  Standards for a Writ of Habeas Corpus

Federal habeas corpus relief is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

/////

Under section 2254(d)(1), a state court decision is "contrary to" clearly established United States Supreme Court precedents if it applies a rule that contradicts the governing law set forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at different result. Early v. Packer, 537 U.S. 3, 7 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-406 (2000)).

Under the "unreasonable application" clause of section 2254(d)(1), a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from the Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case. Williams, 529 U.S. at 413. A federal habeas court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Id. at 412; see also Lockyer v. Andrade, 538 U.S. 63, 75 (2003) (it is "not enough that a federal habeas court, in its independent review of the legal question, is left with a 'firm conviction' that the state court was 'erroneous.'") The court looks to the last reasoned state court decision as the basis for the state court judgment. Avila v. Galaza, 297 F.3d 911, 918 (9th Cir. 2002).

II.     Petitioner's Claim

As his only claim, petitioner asserts that the California Supreme Court erred in denying review of this matter, "thus leaving an important question of law unanswered." (Pet. at 5.) This argument lacks merit. Upon review of the petition in its entirety, including his attached unsuccessful petition for review to the California Supreme Court, it is apparent that petitioner is challenging the trial court's imposition of aggravated terms on both the attempted murder charge and the gun use enhancement. Petitioner argues that the trial court based those aggravated terms on facts not proved beyond a reasonable doubt to a finder of fact, in violation of Blakely v.

5

Washington, 542 U.S. 296 (2004).

The last reasoned rejection of this claim is the decision of the California Court of Appeal for the Third Appellate District on petitioner's direct appeal. The state court rejected this claim on the ground that:

> [Petitioner] contends that imposition of the upper term violated his right to a jury trial and proof beyond a reasonable doubt as interpreted in Apprendi v. New Jersey (2000) 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (Apprendi), Blakely v. Washington (2004) 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (Blakely), and Cunningham v. California (2007) 549 U.S. 270, 127 S.Ct. 856, 166 L.Ed.2d 856 (Cunningham).
>
> Apprendi held that other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be tried to a jury and proved beyond a reasonable doubt. (Apprendi, supra, 530 U.S. at p. 490, 120 S.Ct. at p. 2363, 147 L.Ed.2d at p. 455.) For this purpose, the statutory maximum is the maximum sentence a court could impose based solely on facts reflected by a jury's verdict or admitted by the defendant; thus, when a court's authority to impose an enhanced sentence depends upon additional factfindings, there is a right to a jury trial and proof beyond a reasonable doubt on the additional facts. (Blakely, supra, 542 U.S. at pp. 303-305, 124 S.Ct. at pp. 2537-2538, 159 L.Ed.2d at pp. 413-414.)
>
> In Cunningham, supra, 549 U.S. at p. ----, 127 S.Ct. at p. 860, 166 L.Ed.2d at p. 864, the United States Supreme Court held that by "assign[ing] to the trial judge, not to the jury, authority to find the facts that expose a defendant to an elevated 'upper term' sentence," California's determinate sentencing law "violates a defendant's right to trial by jury safeguarded by the Sixth and Fourteenth Amendments." (Ibid.,overruling People v. Black (2005) 35 Cal.4th 1238, 29 Cal.Rptr.3d 740, 113 P.3d 534 on this point, vacated in Black v. California (2007) --- U.S. ----, 127 S.Ct. 1210, 167 L.Ed.2d 36.)
>
> Of course, as the Supreme Court expressly recognized in Blakely, a defendant entering into a plea agreement may waive his right to a jury trial on additional facts used to impose an enhanced sentence. "When a defendant pleads guilty, the State is free to seek judicial sentence enhancements so long as the defendant either stipulates to the relevant facts or consents to judicial factfinding. [Citations.]" (Blakely, supra, 542 U.S. at p. 310, 124 S.Ct. at p. 2541, 159 L.Ed.2d at pp. 417-418.)
>
> In this case, [petitioner] pled no contest and entered a Harvey waiver. In [People v.] Harvey (1979), 25 Cal.3d 754, 159 Cal.Rptr. 696, 602 P.2d 396, the Supreme Court held that, in imposing sentence under a plea bargain, the court may not consider evidence of any crime as to which charges were dismissed as a "circumstance in aggravation" supporting the upper term on the remaining counts. (Harvey, supra, at p. 758, 159 Cal.Rptr. 696, 602 P.2d 396.) The court deemed it "improper and unfair" to permit the sentencing court to consider any of the facts underlying dismissed counts because, absent an agreement to the contrary, a plea

bargain implicitly includes the understanding that the [petitioner] will suffer no
/////
adverse sentencing consequences by reason of the facts underlying, and solely pertaining to, dismissed counts. (Ibid.)

To avoid the Harvey restriction, prosecutors often "condition[ ] their plea bargains upon the defendant agreeing that the sentencing court may consider the facts underlying the not-proved or dismissed counts when sentencing on the remainder." (People v. Myers (1984) 157 Cal.App.3d 1162, 1167, 204 Cal.Rptr. 91.) Defendants may accept this relatively minor potential consequence in order to avoid other convictions or sentencing enhancement terms. (Ibid.) This agreement is known as a "Harvey waiver." (Ibid.) A Harvey waiver permits the sentencing court to consider the facts underlying dismissed counts and enhancements when determining the appropriate disposition for the offense or offenses of which the defendant stands convicted. (People v. Moser (1996) 50 Cal.App.4th 130, 132-133, 57 Cal.Rptr.2d 647.)

In the "SENTENCING" section of the plea form, [petitioner] initialed the following provisions:

> "28. I DO UNDERSTAND THAT THE MATTER OF PROBATION AND SENTENCE IS TO BE DETERMINED SOLELY BY THE SUPERIOR COURT JUDGE.
>
> "29. (HARVEY WAIVER) I STIPULATE THE SENTENCING JUDGE MAY CONSIDER MY PRIOR CRIMINAL HISTORY AND THE ENTIRE FACTUAL BACKGROUND OF THE CASE, INCLUDING ANY UNFILED, DISMISSED OR STRICKEN CHARGES OR ALLEGATIONS OR CASES WHEN GRANTING PROBATION, ORDERING RESTITUTION OR IMPOSING SENTENCE."

Both [petitioner] and his trial counsel stated that these terms were read verbatim to [petitioner] and [petitioner] understood them. Pursuant to the agreement, the additional counts, enhancements, and two additional cases were dismissed, with the court specifically noting it was with a Harvey waiver.

The Harvey waiver that [petitioner] entered in this case was explained in extremely broad terms. The waiver encompassed not only the entire factual background of the case, including any unfiled, dismissed or stricken allegations, charges, or cases, but also encompassed [petitioner's] criminal history, which included several additional instances of violence charged in separate cases. (See Harvey, supra, 25 Cal.3d 754, 159 Cal.Rptr. 696, 602 P.2d 396.) Further, [petitioner] specifically understood the judge alone, not a jury, would determine his sentence.

The trial court imposed the upper term because the crime involved great violence and great bodily injury, and because [petitioner] has a history of violence and is increasingly dangerous. (See Cal. Rules of Court, rule 4.421(a)(1) and (b)(1).) [Petitioner] argues that none of these facts were found by a jury to be true beyond a reasonable doubt and, indeed, it is unclear that a jury presented with the

7

> question would have found them to be true, because they were based on dismissed and disputed charges. However, all of these aggravating factors cited by the trial court were encompassed in [petitioner's] waiver, which permitted the trial court to consider the entire background of the case, the dismissed or stricken charges or allegations and [petitioner's] criminal history when imposing sentence.
>
> [Petitioner] had engaged in acts of domestic violence, as well as gang-related violence. He admitted to the probation officer that he had head-butted his girlfriend because she wanted to break up with him. Although he denied holding his girlfriend hostage or threatening her with a knife, he admitted something had occurred that evening when he put in his statement in mitigation that his sister had "witnessed the incident" and "told law enforcement that although [petitioner] had a pocketknife in his hand, it wasn't open during the incident."
>
> Despite [petitioner's] eventual claim to the probation officer that he was not involved with a gang, in light of the facts, his attorney understandably admitted that the other instances of violence involved gang activity. [Petitioner] admitted to chasing the victim twice in his car, at least once at high speed, "confronting" the victim the first time when the victim's car was disabled and hitting him with a weapon, and running him off the road the second time. He justified this behavior by explaining he was angry because the victim "threw up hand signals." No one disputed that [petitioner's] actions resulted in great bodily injury.
>
> Thus, throughout the sentencing proceedings, [petitioner] effectively "stipulate[d] to the relevant facts" necessary to impose the upper term, thereby waiving his right to have a jury trial and proof beyond a reasonable doubt on those facts. (Blakely, supra, 542 U.S. at p. 310, 124 S.Ct. at p. 2541, 159 L.Ed.2d at pp. 417-418.) As part of a plea bargain wherein three separate cases involving numerous violent charges and enhancements were dismissed with a Harvey waiver and having specifically agreed that the trial court could consider those facts for purposes of aggravating his sentence, [petitioner] cannot now complain of error under Blakely and Apprendi. (Ibid.)

(People v. Munoz, slip op. at 165-68.)

A criminal defendant is entitled to a trial by jury and to have every element necessary to sustain his conviction proven by the state beyond a reasonable doubt. U. S. Const. amends. V, VI, XIV. In Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), the United States Supreme Court held that the Due Process Clause of the Fourteenth Amendment requires any fact other than a prior conviction that "increases the penalty for a crime beyond the prescribed statutory maximum" to be "submitted to a jury and proved beyond a reasonable doubt." In Blakely, the United States Supreme Court decided that a defendant in a criminal case is entitled

to have a jury determine beyond a reasonable doubt any fact that increases the statutory maximum sentence, unless the fact was admitted by the defendant or was based on a prior conviction. Id., 542 U.S. at 303-04. The Supreme Court also clarified the definition of "statutory maximum" for purposes of the constitutional rule: "the relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose *without* any additional facts." Id. at 2537. In United States v. Booker, 543 U.S. 220 (2005), the United States Supreme Court applied Blakely to the Federal Sentencing Guidelines. The court clarified that "'the statutory maximum' for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." Id. at 232. In Cunningham v. California, 549 U.S. 270 (2007), the Supreme Court, citing Apprendi and Blakely, held that California's Determinate Sentencing Law violates a defendant's right to a jury trial to the extent it permits a trial court to impose an upper term based on facts found by the court rather than by a jury. The court determined that "the middle term prescribed in California's statutes, not the upper term, is the relevant statutory maximum." Id. at 288. The Ninth Circuit subsequently held that Cunningham may be applied retroactively on collateral review." Butler v. Curry, 528 F.3d 624, 639 (9th Cir. 2008).

Under California law, the existence of a single aggravating circumstance is legally sufficient to make the defendant eligible for the upper term. Butler v. Curry, 528 F.3d 624, 642 (9th Cir. 2008); People v. Black, 41 Cal.4th 799, 813 (2007); People v. Osband, 13 Cal.4th 622, 728 (1996). That is, only one aggravating factor is necessary to set the upper term as the "statutory maximum" for Apprendi and Blakely purposes as long as it is established in accordance with the constitutional requirements set forth in Blakely. Black, 41 Cal.4th at 81. While the court may make factual findings with respect to additional aggravating circumstances, these findings, themselves, do not further raise the authorized sentence beyond the upper term. Id. Furthermore, with respect to a Sixth Amendment sentencing violation, "the relevant question

9

is not what the trial court would have done, but what it legally could have done." Butler, 528 F.3d at 648. After validly finding one aggravating factor, a trial court legally could impose an upper term sentence. That the judge might not have imposed an upper term sentence in the absence of additional aggravating factors does not implicate the Sixth Amendment. Butler, 528 F.3d at 649. Accordingly, petitioner's upper term sentence is not unconstitutional if at least one of the aggravating factors that the judge relied upon in sentencing petitioner was established in a manner consistent with the Sixth Amendment.

During sentencing, the trial court relied on the probation report and sentenced him based thereon:

> The Court finds there is a factual basis for the plea and the admission of the enhancement, and it is the judgment of this Court the defendant is guilty of that offense and that the enhancement is true. [¶]
>
> It is the Court's intention to impose the upper term as the base term, both as to the attempted murder and as to the enhancement. The Court finds that to be the appropriate base term, because the circumstances in aggravation outweigh the circumstances in mitigation. . . .
>
> The Court would note in terms of circumstances in mitigation, that the defendant has an insignificant prior record.
>
> Circumstances in aggravation, however, can be summarized as the crime involved great violence and great bodily injury, and the defendant has a history of violence, and it is increasingly dangerous. Therefore, the defendant is sentenced to the Department of Corrections for a period of nine years on the attempted murder and ten years for the 12022.5 enhancement. Those are to run consecutive, for a total of 19 years.

(Lodgment 2 at 65-66.)

The probation report reveals petitioner's involvement in two domestic violence incidents involving his ex-girlfriend. (Lodgment 1 at 97-98.) During the first incident on September 6, 2004, petitioner allegedly head-butted the victim causing swelling of approximately 1.5" wide on her forehead. (Id. at 98.) During the second incident on May 29, 2005, petitioner pulled a knife and threatened to kill the victim, holding her against her will in a bedroom for approximately fifteen minutes. (Id. at 97.) When the victim attempted to telephone

for help, petitioner disabled the phone and attempted to slash her in the stomach area. (Id. at 97-98.) The victim did not sustain any injuries as a result of this offense. (Id. at 98.) Charges against petitioner in both of these domestic violence cases were dismissed in light of the petitioner's plea in the offense underlying the instant petition of writ of habeas corpus.

In statements made to the probation officer, petitioner denied holding his girlfriend hostage or threatening her with a knife, but he did admit head-butting her. (Lodgment 1 at 111-13.) Petitioner also admitted following Masters twice while in a vehicle, one time at a high speed, and that at least one of the car chases involved gang activity. (Id.) Petitioner further admitted that due to the second car chase, Masters's car drove off of a cliff. (Id. at 113.) As correctly noted by the appellate court, these admissions would have been sufficient as stipulations necessary to impose an upper term as they demonstrated increasing dangerousness and behavior that resulted in great bodily injury. See Butler, 528 F.3d at 649.

Petitioner's claim is further foreclosed by People v. Harvey, 25 Cal.3d 754, 758 (1979). A Harvey waiver permits a sentencing court to consider counts that were dismissed under a plea bargain, as well as facts obtained from the probation report. The state appellate court was correct in noting that, exclusive of petitioner's admissions, the facts relied on by the trial judge could not have gone before a jury because they concerned dismissed charges. The trial judge's findings, however, were properly based on information and statements contained in the probation report and within the purview of Harvey. See, e.g., Lodgment 1 at 99-101, 111-14; Harvey, 25 Cal.3d at 758-59.

By signing the plea agreement, petitioner expressly articulated his understanding of the Harvey waiver. (See Lodgment 1 at 56-60; 2 at 33-35.) Petitioner indicated that he understood that there existed a factual basis for his plea and admissions, and that the court may take facts from the probation reports, police reports or other sources to establish the factual basis. (Lodgment 1 at 56.) Petitioner also indicated his understanding that the matter of probation and sentencing would be determined solely by the state court judge. (Id. at 59.) Finally, petitioner's

11

initials demonstrate his understanding that "(HARVEY WAIVER) THE SENTENCING JUDGE MAY CONSIDER MY PRIOR CRIMINAL HISTORY AND THE ENTIRE FACTUAL BACKGROUND OF THE CASE, INCLUDING ANY UNFILED, DISMISSED OR STRICKEN CHARGES OR ALLEGATIONS OR CASES WHEN GRANTING PROBATION, ORDERING RESTITUTION OR IMPOSING SENTENCE." (Id.)

There is no dispute that petitioner comprehended the terms of the plea bargain, including the Harvey waiver. Petitioner may not now contest the trial court's findings based on precisely those facts encompassed by the waiver. Accordingly, for the foregoing reasons, petitioner is not entitled to relief on his claim of sentencing error.

The state court's rejection of petitioner's claim for relief was neither contrary to, nor an unreasonable application of, controlling principles of United States Supreme Court precedent. Petitioner's claim for relief should be denied.

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, "[t]he district court must issue or a deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11, 28 U.S.C. foll. § 2254. A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue. Fed. R. App. P. 22(b). For the reasons set forth in these findings and recommendations, petitioner has not made a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability should issue.

For the foregoing reason, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty

12

days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 14, 2010.

_____
UNITED STATES MAGISTRATE JUDGE

/014;muno2289.157